IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBERT WESLEY BECKUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-201 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Robert Wesley Beckum appeals the decision of the Acting Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  BACKGROUND

Plaintiff protectively applied for DIB and SSI on February 5, 2010, alleging a disability onset date of November 30, 2008. Tr. ("R."), pp. 55-58. The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 63-66, 71-76. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 78-82, and the ALJ held a hearing on June

21, 2012. R. 21-48. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Steven Cosgrove, a Vocational Expert ("VE"). Id. On July 12, 2012, the ALJ issued an unfavorable decision. R. 7-20.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 30, 2008, the alleged onset date (20 C.F.R. § 404.1571 *et seq.* and § 416.971 *et seq.*).

2. The claimant has the following medically determinable impairments: diabetes mellitus and diabetic retinopathy (20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et seq.* The claimant, however, does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work activities for 12 consecutive months; therefore, the claimant does not have a severe impairments or combination of impairments. (20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et seq.* (c)).

R. 12-15.

Because the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from November 30, 2008, through July 12, 2012 (the date of the decision). R. 15. When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding Plaintiff did not have any severe impairments, and (2) the ALJ erred in failing to present a complete hypothetical question to the VE that accurately described all of Plaintiff's relevant limitations. See doc. no. 10 ("Pl.'s Br."). The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. See doc. no.

12 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. A Claimant's Burden at Step Two of the Sequential Process Is Mild, and Only the Most Trivial Impairments May Be Rejected.

Plaintiff argues that the ALJ erred at step two of the sequential process because she did not find that Plaintiff's medically determinable impairments of diabetes mellitus and diabetic retinopathy were severe impairments, and in particular, that the ALJ did not specifically address Plaintiff's visual impairments. Pl.'s Br., pp. 10-12, 15-18. The Commissioner argues that diagnosis of a condition alone does not mean that such a condition interferes with Plaintiff's ability to perform basic work activities for the requisite twelve-month period, and Plaintiff has not shown any severe visual impairment for a period of twelve months. Comm'r's Br., pp. 4-8, 10-11.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

      (2)      Capacities for seeing, hearing, and speaking;

      (3)      Understanding, carrying out, and remembering simple instructions;

      (4)      Use of judgment;

      (4)      Responding appropriately to supervision, co-workers and usual work situations; and

      (5)      Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c) and 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted).

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild." Id. Although "the 'severity' of a medically ascertainable disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standard of bodily perfection or normality," McCruter, 791 F.2d at 1547, the Eleventh Circuit has acknowledged that a finding a claimant's impairments are not severe is "unusual." Gray v. Comm'r of Soc. Sec., 426 F. App'x 751, 753 (11th Cir. 2011).

B. **The ALJ's Step Two Severity Determination Concerning Plaintiff's Visual Impairments Is Not Supported by Substantial Evidence.**

As explained above, the capacity for seeing is classified as a basic work activity. The ALJ acknowledged Plaintiff had alleged disability due to diabetes, blindness in his right eye and limited vision in the left, with associated symptoms of retinal bleeding and diminished visual acuity. R. 14. Although the ALJ accepted Plaintiff's medically determinable impairments could be expected to produce the symptoms alleged, the ALJ rejected the intensity, persistence and limiting effects of the symptoms as subjectively described by Plaintiff. As it pertains to Plaintiff's visual impairments, the ALJ particularly stated that no functional limitations associated with the diabetes mellitus or diabetic retinopathy had been identified and heavily relied on the findings of a consultative examination by Howard Bruckner, M.D., in November 2010 that found Plaintiff had 20/40 vision in the right eye, the visual field for the right eye was only mildly constricted, and the left eye was "grossly ok." R. 14. The ALJ also repeatedly noted that Plaintiff had not seen a doctor for vision problems since January of 2011.[1] R. 14. As the ALJ stopped her evaluation at step two of the process, in essence she determined any visual impairment was "trivial" and "could not possibly prevent Plaintiff from

---

[1] Although the opinion states Plaintiff had not seen a doctor for his "vision problems" since January of 2011, (R. 14), the question to Plaintiff at the hearing was an inquiry as to when he'd been to a doctor about blood in his eye, (R. 32).

6

working." See McDaniel, 800 F.2d at 1031; Stratton, 827 F.2d at 1452 & n.9.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). The Eleventh Circuit does not require citation of particular phrases or formulations when making a credibility determination, but the reviewing court must be able to determine that the ALJ considered a claimant's medical condition as a whole. Dyer v. Barhnart, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

As to Plaintiff's claimed limitations based on his visual impairment, he testified at the hearing that sometimes he cannot see well enough to do anything, described how blood gets in his eye and restricts his vision even after he had eye surgery, and explained his wife must give him his insulin shots because he cannot see the numbers on the syringe. R. 31, 32, 36, 39. In particular, Plaintiff explained he had been in an accident on a four-wheeler in 2008 that resulted in surgery on his face in which doctors "went in behind my eyelid and . . . stitched it up. . . .

When my eyelids, when it got healed, my eyelids is growing backwards into my eye now. That's why I'm not wearing glasses. The contact kind of protects my eye." R. 35-36. Plaintiff went on to testify that his contact not only protects his eye but does contain medicine that allows him to "see a little bit better." R. 36. Plaintiff further testified that if he leaned his head in a certain direction, he could produce blood in his eye that causes red clouds in his vision. R. 39. Bright sunlight also blinds him. R. 42.

Additionally, Plaintiff testified that financial hardship prevented him from going to a doctor. R. 34. Moreover, although in her final decision the ALJ determined Plaintiff had no functional limitations stemming from his medical conditions, during the hearing, she presented two different hypotheticals to the VE that contemplated a person who has visual limitations.[2] R. 45, 47. Because the administrative decision focuses only on the aspects of the evidence that support the ALJ's conclusion and disregards this other contrary evidence, as it pertains to the Holt analysis described *supra*, without adequate explanation, the ALJ's decision is not based upon substantial evidence. See McCruter, 791 F.2d at 1548.

First, the ALJ faulted Plaintiff for not going to a doctor regarding his vision for over a year, but it is well-settled that poverty may excuse failure to comply with treatment. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to

---

[2]The underlying assumptions of hypothetical questions presented to a VE must accurately and comprehensively reflect the claimant's characteristics. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). Because the sequential evaluation process stopped at step two, the ALJ's written decision never addressed the VEs responses to the hypotheticals concerning a claimant with visual impairments. R. 45-48. Nonetheless, an ultimate conclusion that Plaintiff's alleged visual limitations do not exceed a de minimis or trivial level appears incongruous with presentation of hypotheticals to the VE that included visual limitations.

8

afford medical care before denying" benefits based on non-compliance with such care. Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012). The Court also notes Plaintiff testified about wearing contacts, (R. 35-36, 38), and thus, he must have sought some type of treatment to get a prescription for corrective lenses. Even if the Court presumes that Plaintiff's failure to go to an eye doctor is but one of multiple factors considered by the ALJ in evaluating Plaintiff's subjective complaints, the Court must acknowledge that Plaintiff's non-compliance weighed negatively in the ALJ's analysis. R. 14. That is, the failure to seek treatment is inextricably intertwined with the credibility determination, as well as the ALJ's decision to discredit Plaintiff's subjective complaints, and ultimately, with the ALJ's decision to stop the sequential process at step two. The Court cannot guess at how much weight the ALJ placed on Plaintiff's failure to seek treatment and whether consideration of an inability to pay might change the ALJ's decision that Plaintiff did not meet his mild burden at step two. See Dawkins v. Bowen, 848 F.2d 1211, 1213-14 (11th Cir. 1988).

Second, the ALJ never mentions that Plaintiff had eye surgery on December 29, 2010, at which time the pre- and post-operative diagnosis was tractional retinal detachment, vitreous hemorrhage, and proliferative diabetic retinopathy. R. 460-61. Dr. Bruckner acknowledged this impending surgery in his consultative report and stated that Plaintiff's prognosis was "guarded." R. 432. Indeed, Dr. Bruckner noted that the left eye was "filled with hemorrhage," but the ALJ focused only on Dr. Bruckner's finding of 20/40 vision in Plaintiff's right eye and "grossly ok" vision in the left eye. R. 14, 432. Nor did the ALJ acknowledge the medical records from Ranjit Dhaliwal, M.D., dating approximately four months before Plaintiff's alleged onset date, indicating Plaintiff was at a significant risk for blindness. R. 322 (explaining "possibility of developing neovascular glaucoma and significant blindness is very high in the left eye and . . .

both eyes will require both focal laser treatments and extensive peripheral scatter laser treatment"). The ALJ's decision also does not discuss the surgery Plaintiff described after his 2008 four-wheeler accident that causes his eyelids to grow "backwards into [his] eye."

Furthermore, Juanita Trimor, M.D., twice conducted a consultative examination of Plaintiff, once on October 30, 2008, just prior to Plaintiff's alleged onset date of November 30, 2008, and once on August 13, 2010. R. 326-30; 424-26. In 2008, Dr. Trimor stated that Plaintiff's vision had been tested and that there were visual limitations, to include limited near acuity and far acuity. R. 328. By 2010, Dr. Trimor stated Plaintiff had lost vision in his left eye and that the right eye has retinopathy; her diagnoses were Type II Diabetes Mellitus and Diabetic Retinopathy with Loss of Vision in the Left Eye. R. 424-25. She stated her findings were based "on the history obtained, the physical exam performed today and [her] clinical assessment." R. 425. The ALJ never mentioned Dr. Trimor's "loss of vision" assessment, and although the Commissioner argues this assessment "appears based solely on Plaintiff's report," (Comm'r's Br., p. 5), such a guess "appears" to be at odds with Dr. Trimor's statement that she performed a physical examination of Plaintiff.

The Commissioner goes to great lengths to argue that Plaintiff's vision was not impaired for the requisite twelve month period to qualify as a severe impairment. Comm'r's' Br., pp. 5-8. Notably, however, a significant portion of that argument relies on a correction provided by the eye surgery in 2010 the ALJ did not discuss and Plaintiff's failure to see an eye doctor. Whatever the merits of the Commissioner's argument, the critical fact is that her argument was not made by the ALJ at step two, and the Court declines this invitation to conduct a *de novo* review of the evidence with regard to Plaintiff's visual impairments, as such determination is for the ALJ, not this Court, to make in the first instance. See <u>Martin v. Heckler</u>, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves

considered by the [Commissioner]"). Moreover, similar to the ALJ, in her briefing the Commissioner did not address Plaintiff's testimony that paying for a doctor's visit was a hardship for him.

The Commissioner also argues state agency consultants reviewed the medical files to determine Plaintiff's visual impairments were not severe. Comm'r's Br., p. 8. One of those doctors, Daniel Hennessy, M.D., upon whom the ALJ also relied, stated there were "[n]o visual fields in file" and reviewed the records prior to Plaintiff's eye surgery on December 29, 2010. R. 14 (citing Ex. 10F, R. 434), 460. This of course begs the question as to how a medical assessment can be complete if relevant medical records are not present in the record. Nor is it clear that the last state agency consultant with expertise as a specialist in vision/ophthalmology to review the record had a complete record because James Dew, M.D., reviewed the records on March 23, 2011, affirming the assessment of Dr. Hennessy "as written" one week before Plaintiff's eye surgery. R. 492. In sum, because the ALJ's evaluation of the visual impairments alleged by Plaintiff is not supported by substantial evidence, a remand is warranted.

Because the Court recommends remand based on alleged error that stopped the sequential process at step two, the Court need not address Plaintiff's other allegations of error that he claims were committed at subsequent steps in the evaluation process but were necessarily not contained in the ALJ's written decision. Of course, should the District Judge accept this recommendation for remand, and should the sequential process proceed beyond step two on remand, all impairments evaluated, and any hypotheticals presented to a VE, must be in accordance with the applicable regulations and requirements of Eleventh Circuit case law.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 24th day of November, 2014, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA